UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES

v.                                              Case No. 8:11-cr-501-T-24MAP

JOHN ANTHONY GIANOLI, III
_____/

**ORDER**

This cause comes before the Court on Defendant's Motion for Judgment of Acquittal (Doc. 75) and Defendant's Motion for a New Trial (Doc. 76). For the reasons set forth below, the motions are **DENIED**.

**I. Background**

John Gianoli, III ("Gianoli"), a medical doctor, was indicted on five counts of Distribution of Oxycodone outside the course of professional practice in violation of 21 U.S.C. § 841(a)(1). (Doc. 1). Each count alleged a distribution of oxycodone on a separate date. (Doc. 1). On June 15, 2012, a jury returned a guilty verdict as to Count Two. (Doc. 69). The jury found Gianoli not guilty of Counts Three and Five, and it was unable to reach a verdict on Counts One and Four. (Doc. 69).

**II. Motion for Judgment of Acquittal**

On June 29, 2012, Gianoli filed a Motion for Judgment of Acquittal, alleging that: 1) the Government did not meet its burden in proving that Gianoli acted outside the usual course of professional practice in Count Two; 2) Gianoli was not indicted for conduct relating to acting without a legitimate medical purpose; and 3) the verdict should be set aside due to inconsistency between the verdicts. (Doc. 75).

1

In deciding a motion for judgment of acquittal, this Court "must view the evidence in the light most favorable to the government . . . and determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." See United States v. Sellers, 871 F.2d 1019, 1021 (11th Cir. 1989). The prosecution need not rebut all reasonable hypotheses other than guilt and the "jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." Id. The court "must accept all reasonable inferences and credibility determinations made by the jury." Id.

### A. **Evidence Supporting Count Two**

Gianoli argues that because the jury acquitted him of two counts and was unable to reach a verdict on two other counts, "it is clear that the Jury did not find Dr. [Rafael] Miguel to be a credible witness and disregarded his opinion that the Defendant issued the Oxycodone prescriptions outside the course of professional practice on the alleged dates contained in the five individual counts." (Doc. 75, p.4).

The fact that the jury acquitted Gianoli on two counts and did not reach a verdict on two other counts, does not lead to the conclusion that the jury discredited Dr. Rafael Miguel's testimony that Gianoli was acting outside the course of professional practice. The evidence supporting each of the five counts differed.

Some counts were supported by audio recordings of the conversations between Gianoli and the undercover detective that were introduced into evidence and other counts were not. Each count was also supported by different evidence in that the conversations between the undercover detective and Gianoli differed on each respective date. Some conversations between Gianoli and the undercover detective were more explicit than others about whether the detective was not

2

taking the prescribed oxycodone but was instead giving his oxycodone to his girlfriend. For Count Two, the count of conviction, an audio recording of the conversation was introduced into evidence that included explicit statements by the undercover detective that he was feeling no pain, that he was not taking the oxycodone prescriptions, and that he was giving the oxycodone to his girlfriend instead of taking it as prescribed.

Gianoli further argues that a slight discrepancy between the testimony of expert witness Dr. Rafael Miguel and Detective Joseph Pittaluga as to whether they had met with one another, undermined Dr. Miguel's testimony. (Doc. 75, p.3). Gianoli argues that Dr. Miguel testified that he met with Detective Pittaluga before trial, whereas Detective Pittaluga testified he had seen Dr. Miguel at the AUSA building but did not meet with him, and that this difference in testimony materially undermined Dr. Miguel's credibility. (Doc. 75, p.3). This Court disagrees that any discrepancy, if one existed, was material. This issue was a tangential issue raised among hours of testimony about Dr. Miguel's professional background, credentials, and professional opinions. This testimony is unlikely to have discredited Dr. Miguel's medical opinion. As such, the evidence was sufficient to support a guilty verdict as to Count Two.

**B.    Indictment**

Gianoli next argues that although he was indicted for distribution of oxycodone "acting outside the usual course of professional practice," the indictment did not include language that he "acted without legitimate medical purpose." (Doc. 78, p.8). Gianoli argues that because the jury instructions permitted the jury to find Gianoli guilty if he acted either outside the usual course of professional practice or without legitimate medical purpose, the indictment was unlawfully constructively amended and that this is *per se* reversible error. (Doc. 76, p.8).

In considering this question, it is helpful to review the legal framework of a 21 U.S.C. § 841(a)(1) violation. The Eleventh Circuit in United States v. Tobin laid out the legal framework. 676 F.3d 1264, 1279 (11th Cir. 2012). First, Section 841(a)(1) provides that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally to . . . distribute . . . or dispense . . . a controlled substance." See 21 U.S.C. § 841(a)(1); see also Tobin, 676 F.3d at 1279. However, a "practitioner" may dispense Schedule III and Schedule IV substances with a "prescription." See 21 U.S.C. § 829(b); see also Tobin, 676 F.3d at 1279. For a "prescription of a controlled substance to be effective, it must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." See 21 C.F.R. § 1306.04(a); see also Tobin, 676 F.3d at 1279. Further, 21 U.S.C. § 885(a)(1) states that "It shall not be necessary for the United States to negative any exemption or exception set forth in this subchapter in any complaint, information, indictment, or other pleading or in any trial . . . and the burden of going forward with the evidence with respect to any such exemption or exception shall be upon the person claiming its benefit." See 21 U.S.C. § 885(a)(1); see also Tobin, 676 F.3d at 1278 n.5.

The Tobin court explained that a distribution is unlawful if the prescription was either not for a legitimate purpose or if the prescription was not made in the usual course of professional practice. Id. at 1282. The Tobin court discussed these alternative ways of showing the unauthorized nature of the distribution in the context of an affirmative defense, when the defendant alleges that he distributed the drug lawfully. The Tobin court acknowledged that an indictment is sufficient even if it does not include specific language negating the affirmative defense. Id. at 1278 n.5. The court stated that "Congress has specified that '[i]t shall not be

4

necessary for the United States to negative any exemption or exception set forth in [the CSA[1]] in any indictment.'" Id. (citing 21 U.S.C. § 885(a)(1)). As support, the Tobin court cited United States v. Steele, 147 F.3d 1316 (11th Cir. 1998) (en banc), in which the Eleventh Circuit "recognized that as a result of this statutory directive [in 21 U.S.C. § 885(a)(1)], an indictment is not insufficient if it does not include the *legal* assertion that the distribution of controlled substances occurred outside of the 'usual course of professional practice.'" See Tobin, 676 F.3d at 1278 n.5.

The Steele court held that, "Congress has explicitly and unambiguously stated in § 885(a)(1) that an indictment charging a defendant with violating § 841(a)(1) is not required to negate the course of professional practice exception. Congress could scarcely have been any clearer about that." See Steele, 147 F.3d at 1319. The Steele court held that the indictment, without the usual course of professional practice language, still presented the essential elements of the charged offense, notified the accused of the charges to be defended against, and enabled the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense. Id. at 1320.

As such, Gianoli's claim that the indictment was constructively amended is without merit.

### C. Inconsistency of Verdicts

Gianoli argues that the verdicts were inconsistent and should be set aside for that reason. An acquittal on some counts, and an inability to reach a verdict on other counts, does not mean

---

[1] Controlled Substances Act.

that the verdicts were inconsistent or that the guilty verdict should be set aside. The evidence, recordings, and conversations supporting each distribution charged under each count were different. The jury could have found the evidence supporting Count Two to have been stronger than the evidence supporting the other counts.

## III.   Motion for New Trial

Upon motion of the Defendant, the court may vacate any judgment and grant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a).

Gianoli argues he is entitled to a new trial because he was deprived of his right to a unanimous verdict. He argues that some jurors could have found he acted outside the usual course of professional practice while others found he acted without a legitimate medical purpose. (Doc. 76, p.8).[2]

The jury instruction given in Gianoli's case read, in relevant part:

The defendant can be found guilty of the offenses charged in the indictment only if all of the following facts are proved beyond a reasonable doubt:

| First: | that the defendant distributed or caused the distribution of a controlled substance as charged in the indictment; |
|---|---|
| Second: | that the defendant acted knowingly and intentionally; and |
| Third: | that the defendant either acted outside the usual course of professional practice or acted without legitimate medical purpose. |

---

[2]  Gianoli also argues that because the jury instruction included both the language for "outside the usual course of professional practice" and "without legitimate medical purpose," when the indictment only included language about "acting outside the usual course of professional practice," the indictment was unlawfully constructively amended. (Doc. 76, pp. 8-9). The Court does not find merit to this argument. See supra Section II(B) (discussing that indictment need not contain affirmative defense language).

Gianoli argues the jurors had to unanimously agree on which of two possible ways the Government disproved his defense that he was acting in the ususal course of professional practice and was acting with a legitimate medical purpose when he distributed the controlled substance. The cases cited by Gianoli to support this argument, Richardson v. United States, 526 U.S. 813 (1999), Schad v. Arizona, 111 S. Ct. 2491 (1991), United States v. Verbitskaya, 406 F.3d 1324 (11th Cir. 2005), United States v. Acosta, 748 F.2d 577 (11th Cir. 1984), and United States v. Gipson, 553 F.2d 453 (5th Cir. 1977), deal with elements of crimes rather than affirmative defenses. They do not answer the question of whether allowing jurors to choose between alternative methods of disproving the affirmative defense in this case violate unanimity requirements. That Gianoli was distributing the controlled substance in the course of professional practice and for a legitimate medical purpose is an affirmative defense not an element of the charged offense. See Steele, 147 F.3d at 1320.

Even considering the cases cited by Gianoli which address elements of crimes, they still do not provide sufficient support for his claim that unanimity was required. The Court in Schad held that permitting alternative methods of proof for first degree murder, either as premeditated murder or as felony murder, was not constitutional error. Schad, 111 S. Ct. at 2495, 2499. The "statutory alternatives [were] a means of committing a single offense, rather than independent elements of the crime." Id. Similarly, the court in Verbitskaya also held that permitting a jury to consider different methods of how interstate commerce may be affected by extortion when the district court did not require unanimity *sua sponte* and the defendant never requested a special unanimity instruction, did not violate unanimity requirements. See United States v. Verbitskaya, 406 F.3d 1324, 1334 (11th Cir. 2005).

Although the Fifth Circuit in United States v. Gipson, 553 F.2d 453, 458 (5th Cir. 1977) found a unanimity problem when a jury did not have to unanimously agree whether the defendant was "receiving, concealing or storing" versus "bartering, selling or disposing" of stolen property, Gipson was "discredited by the Supreme Court's 1991 decision in Schad v. Arizona" because the Court found the Gipson approach of distinct conceptual groupings "too indeterminite to provide concrete guidance to courts faced with verdict specificity questions." See Verbitskaya, 406 F.3d at 1334; see also Schad, 111 S. Ct. At 2498-99.[3]

Finally, although the Supreme Court in Richardson v. United States did find unanimity required regarding which violations made up a continuing series of violations for purposes of a criminal enterprise statute, the Court placed particular significance on the word "violation" and held that violations in the 21 U.S.C. § 848 context ("continuing criminal enterprise") are separate elements that must be unanimously decided. 526 U.S. 813, 818-824 (1999). Richardson explicitly recognized that in some contexts "a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." Id. at 817; see e.g., United States v. Davis, 306 F.3d 398, 413-14 (6th Cir. 2002) (declining the extend Richardson to require unanimity as to the various means by which a defendant can aid and abet such as counseling, commanding, inducing, or procuring the commission of a crime). Moreover, Richardson did not address unanimity in the context of alternative methods of disproving an

---

[3] The Eleventh Circuit in Acosta did not find a unanimity problem when jurors did not decide whether the defendant was guilty of embezzlement or misapplication, but this was addressed pre-Schad under the Gipson approach. See United States v. Acosta, 748 F.2d 577, 582 (11th Cir. 1984).

8

affirmative defense.

This Court also notes that Gianoli never requested a separate jury finding as to whether Gianoli acted outside the course of professional practice or without a legitimate medical purpose. This Court went over the proposed jury instructions in great detail with counsel outside the presence of the jury prior to giving the jury instructions to the jury. This Court also adopted Gianoli's verdict form almost in its entirety. Gianoli never raised any concerns about unanimity with the Court prior to the Court's instructing the jury. See United States v. Lamb, 162 Fed. App'x 889 (11th Cir. 2006) ("Because the district court instructed the jury that any verdict that it reached must be unanimous and also told the jury that it must find, beyond a reasonable doubt, that [the defendant] knowingly possessed a firearm *or* ammunition in or affecting interstate commerce, the jury was aware that, to find [the defendant] guilty, it unanimously had to find, beyond a reasonable doubt, that [the defendant] possessed a firearm, or that he possessed ammunition, and any error in the court's failure to give a specific instruction as to unanimity did not constitute reversible plain error"); United States v. Dawson, 428 Fed. App'x 933, 934 n.1 (11th Cir. 2011) (no plain error in absence of Supreme Court or circuit precedent resolving a question of statutory construction as to whether an indictment was duplicitous when one of four possible sets of facts could have supported a conviction for soliciting and accepting bribes).

In the absence of a trial objection by Gianoli and any clear precedent requiring a separate finding by the jury as to whether Gianoli acted without a legitimate medical purpose or outside the course of professional medical practice, this Court does not find that the jury instruction as given violated Gianoli's right to a unanimous verdict.

## III. Conclusion

Accordingly, Gianoli's Motion for Judgment of Acquittal (Doc. 75) and Motion for a New Trial (Doc. 76) are **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 3rd day of August, 2012.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record